JOHN A. REILLY, Trustee in Bankruptcy, *v.*
THOMAS MACKENZIE, Trustee, et al.

*Bankruptcy Law—What Passes to Trustee—Contingent Interests.*

The question whether a remainder interest belonging to a bankrupt passed to his trustee in bankruptcy, as being property within the Bankruptcy Act, sec. 70, which the bankrupt could have transferred or which might have been levied on under judicial process against him, depends upon the law of the state.
p. 216

Where property was given to testator's wife for life, with remainder to his eight children, with a provision that in case a child should die before the wife, leaving a child or children, his share should vest in such child or children, while if the child so dying left no child, his share should vest in the survivors of testator's children, and the child or children of any deceased child, one of testator's children had an interest which, though not devisable, was assignable in equity, and which consequently passed to his trustee in bankruptcy.        pp. 220-225

So far as the value of the interest is concerned, there can be no substantial difference between a remainder which is technically vested, but liable to be defeated by the death of the remainderman before the life tenant, and a vested interest in a contingent remainder, the contingency being the survival of the remainderman after the death of the life tenant.          p. 223

*Decided June 29th, 1926.*

Appeal from the Circuit Court of Baltimore City (FRANK, J.).

Petition by John A. Reilly, trustee in bankruptcy of Charles M. Rahe, Jr., in connection with the administration of a trust under the will of Charles M. Rahe, deceased, seeking to compel Thomas Mackenzie, trustee under said will, to pay over to petitioner said bankrupt's share of the trust estate, to which petition said bankrupt and said last mentioned trustee filed answers. From a decree dismissing the petition, the petitioner appeals. Affirmed in part and reversed in part.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Edward H. Burke* and *Roszel C. Thomsen,* with whom were *Bowie & Clark* on the brief, for the appellant.

*Thomas Mackenzie,* for the appellees.

ADKINS, J., delivered the opinion of the Court.

Charles M. Rahe, by his will, devised and bequeathed to his wife, Mary E. Rahe, for life, his dwelling house No. 2 Fairoak Avenue, Waverly, with the furniture therein, free from any obligation to pay for the ordinary repairs, taxes, insurance, or other expenses of upkeep, all of which he directed his trustee to pay out of the income of his estate.

All the rest and residue of his estate he directed should be held by his trustee and invested and reinvested upon the following trusts:

"A. I direct that out of the net income there shall be paid to my wife, as long as she shall live, accounting from the day of my death, the monthly sum of fifty ($50) dollars, the same to be for her personal use.

"B. My trustee shall next pay all the annual expenses upon my property, No. 2 Fairoak Avenue, including therein all the ordinary expenses for repairs, taxes, assessments and insurance.

"C. All the balance of the said net income shall be divided into eight equal parts, and during the life of my said wife, shall be paid over in quarterly installments to my eight children, to each an eighth, as follows. (Here follow the names of the eight children, with "one-eight" after the name of each child.) Without power in any of said children to anticipate his or her share of said income, and the respective receipt of said children if of age, alone to be a sufficient acquittance to the said trustee.

"Should any of said children die before my said wife, leaving children living, then the share in the income of the child so dying shall be paid over to his or her child or children, until the death of my said wife, but should any of my said children die without leaving a child or children living at his or her death, then the said share in the income of the said child so dying shall be divided among the survivors of my said children, and the child or children of any deceased child, the latter to take share of its or their parent.

"D. Upon the death of my wife, Mary E. Rahe, I direct that the whole corpus of my estate, including the dwelling and furniture devised to my wife for life, shall be divided into eight equal parts, and one of said parts shall be paid over by said trustee to each of my said eight children should they be then living excepting to the share of my said son, John Gerhardt Rahe, which shall be held by the said trustee and invested and reinvested, and the net income only paid to my said son, in quarterly installments, until he shall reach the age of forty years, when the trust as to his share shall

cease, and his portion of the corpus shall be paid over
to him absolutely. But my said son shall have no
power to anticipate said income, nor to assign it, and
his receipt only shall be sufficient acquittance to said
trustee.

"E. Should any of my said children die before my
said wife, or should my said son John Gerhardt Rahe
die before reaching forty years of age, leaving a child
or children living, then the share in the said corpus
of the child so dying, shall vest in the said child or
children so left, to be paid over to them upon the death
of my said wife. But should any of my said children
die without leaving a child or children living at his or
her death, then the said share in the corpus of the said
child so dying shall vest in the survivors of my said
children, and the child or children of any deceased
child, the latter to take the share of its or their parent,
to be paid over to them upon the death of my said
wife, except as to any share that may pass to the use
of my said son, John Gerhardt Rahe, which shall be
held in trust as hereinbefore provided as to his share
until he attains the age of forty years."

The will then directs the trustee to set aside the sum of
$500, the income to become a part of the net income of the
estate, and the principal to be used as follows:

"As and only when any of my said five unmarried
children may be married, he shall pay to the said
child so marrying the sum of one hundred dollars in
cash.

"And upon the death of my wife, when the time
shall come for a division of my estate, if any portion
of said five hundred dollars shall remain unused, then
such unused portion shall be divided with the corpus of
my estate."

Thomas Mackenzie is appointed the executor and trustee.

On October 29th, 1925, John A. Reilly, trustee in bank-
ruptcy of Charles M. Rahe, Jr., one of testator's children,
filed a petition in the Circuit Court of Baltimore City, re-

citing the provisions of said will and alleging the adjudication of said Charles M. Rahe, Jr., as a bankrupt on December 10th, 1923 and the appointment of the petitioner as trustee, and praying that said court order the trustee appointed in said will to discover the amount of net income to which said bankrupt may be entitled under the terms of said will from the date he was adjudicated a bankrupt, and that the amount of said net income be paid by said Thomas Mackenzie, trustee, to the petitioner, and that on the death of the said Mary E. Rahe, widow of the testator, a one eighth part of the whole corpus of the estate in the hands of the said trustee be paid and delivered to the petitioner, provided that, on the death of the said Mary E. Rahe, the said Charles M. Rahe, Jr., be then living.

On February 2nd, 1926, an amended petition was filed alleging the death of the said Mary E. Rahe on December 28th, 1925. Answers were filed by Thomas Mackenzie, trustee, and by Charles M. Rahe, Jr.

The matter was submitted on petition and answers and the chancellor signed a decree dismissing the petition. From that decree this appeal was taken.

As the appeal from that part of the decree which deals with the accrued income was abandoned, the only remaining question in the case is: Was the interest or estate in remainder of Charles M. Rahe, Jr., under the will of his father, in the hands of Thomas Mackenzie, trustee, at the date of the adjudication in bankruptcy, such an estate or interest as under the bankruptcy law passed to the trustee in bankruptcy? The answer to that question depends upon whether at that date such interest was "property which prior to the filing of the petition he (Rahe) could by any means have transferred or which might have been levied upon and sold under judicial process against him." Bankruptcy Act, section 70. And whether it comes within that classification depends upon the law of this State. *Remington on Bankruptcy* (1st ed.), sec. 953.

Counsel for appellant and appellee argued with much force and ability, on the one side, that the estate was a

vested remainder, and on the other, that it was a contingent remainder, citing many cases to support their respective contentions.    It would be interesting to analyze and discuss these cases, and if the decision of this case depended upon the determination of that question it would be necessary to do so with a great deal of care.    But on the authority of the case of *Banks' Will,* 87 Md. 425, at p. 443, the interest in remainder of Charles M. Rahe, Jr., passed to his trustee in bankruptcy, even if it be treated as a contingent remainder.

In that case there was a devise by Daniel B. Banks in trust for Anna Godwin for life with remainder to her issue living at her death, *per stirpes,* with the further provision that in case any of her children should die before attaining the age of twenty-one years and without issue, the share devised to them respectively should devolve upon such persons as by the then existing laws of Maryland would take the same as heirs at law of the testator.    W. Frank Godwin, one of the children of Anna, died in 1896, after the death of his mother, before reaching the age of twenty-one years, and without issue.    Andrew Banks, a son of the testator, and therefore one of the heirs at law of testator, had in 1889 applied for the benefit of the insolvent law of Maryland, and his trustee claimed that the insolvent, at the time of the adjudication, had such an interest in the executory devise of the part of testator's estate which devolved upon those who were heirs at law of the testator at the time of the death of W. Frank Godwin, as would pass to the insolvent trustee under section 2 of article 47 of the Code of 1904.    The court said: "The common law declares all contingent estates, when the person to take is not ascertained, to be a mere possibility not coupled with an interest, and to be neither devisable, descendible, alienable by voluntary conveyance, nor subject to execution. 4 *Kent's Comm.* 261; 2 *Washburn, Real Prop.* 238.    Such a naked possibility is in law neither an estate, property, right nor claim.    One having such a possibility, may *in the future* have a right or claim, but cannot be correctly said to have any existing right or claim."    But the court distinguished that case from *Dunn v. Sargent,* 101 Mass. 336, and *Putnam*

*v. Story,* 132 Mass. 205, holding that in those cases the Massachusetts court adhered to the above rule, in the first mentioned case "because they held that persons to take were certain, 'being her own children and *named in the will';* and in the second, because: "There the devise was to a daughter, Frances Bowles, for life, and after her death to be equally divided between *her heirs,* and it was held that the children of Mrs. Bowles, as they were born, took successive contingent remainders * * * liable to be defeated by their death before their mother, and that such vested interest of a child, in such contingent remainder, would pass to his assignee in insolvency, subject to the same contingency. But we .find no analogy between that case and the present, for that case stops just short of where this case begins. It is authority for holding that if W. Frank Godwin had become insolvent, and there were no executory devise over, that his interest would have passed to his assignee, subject to be divested by his death before his mother. But there is nothing in the decree appealed from (which was adverse to the claim of the trustee) in conflict with *Putnam v. Story,* and there is a wide difference between a *vested interest* in a contingent *remainder, which is an existing estate,* and a contingent interest as heirs at law in an executory devise, an estate to arise *in futuro* and by way of *substitution,* and to vest only in those who answer the description of heirs at law at a given future time."

The words "and there were no executory devise over," in the above quotation, can have no significance except to define accurately the facts with which the case of *Putnam v. Story* was dealing. As a matter of fact there was no devise over in that case; but if there had been it could not have affected the reasoning. Nor could the devise over in the case of *Banks' Will* have any bearing on what would have become of W. Frank Godwin's contingent remainder if he had become insolvent.

There is in Massachusetts a statute providing that a creditor may reach in equity any property, right, title, or interest, legal or equitable, of a debtor, although such property "cannot be reached and applied until a future time, or

is of uncertain value, if the value can be ascertained by sale, appraisal, or by any means within the ordinary procedure of the court." Rev. Laws of Mass., ch. 159, sec. 3, cl. 7. That statute, however, is not referred to in *Putnam v. Story, supra;* nor is its existence made a ground of distinction in the case of *Banks' Will, supra.* The decision in the former case was based rather upon the rule laid down by Chancellor Walworth in *Moore v. Lyons,* 25 Wend. 119, viz: "Where a remainder is so limited as to take effect in possession, if ever, immediately upon the determination of a particular estate, which estate is to determine by an event which must unavoidably happen by the efflux of time, the remainder vests in interest as soon as the remainderman is *in esse* and ascertained, provided nothing but his own death before the determination of the particular estate will prevent such remainder from vesting in possession." This rule is quoted with approval in *Lee v. Waltjen,* 141 Md. 450, where an estate in remainder was devised to the children of a life tenant defeasible in the event of the death of the life tenant without children surviving. *Kemp v. Bradford,* 61 Md. 334, to the same effect, is cited with approval.

In the Maryland cases last cited the remainders were held to be vested remainders. But so far as the *value* of the interest is concerned, there can be no substantial difference between a remainder which is technically vested, but liable to be defeated by the death of the remainderman before the death of the life tenant, and a vested interest in a contingent remainder, the contingency being the survival of the remainderman after the death of the life tenant. A purchaser of either interest would take exactly the same chance of enjoying the possession of the property, and the risk would be no greater in the one case than in the other. It was distinctly held in the case of *Banks' Will, supra,* that a vested interest in a contingent remainder "is an *existing estate,*" and not a mere possibility.

The case of *Putnam v. Story* arose under the Bankrupt Act of 1867, which vested in the trustee all the bankrupt's "property, and estate both real and personal." But as said

by Justice Rugg in *Clarke v. Fay,* 205 Mass. 228, there is
nothing in the present bankruptcy act to call for a different
decision.   The opinion of Justice (now Chief Justice) Rugg
in the last mentioned case is an illuminating discussion of the
whole question and unqualifiedly affirms the conclusions
reached in *Putnam v. Story.*   The note to this case (*Clarke
v. Fay, supra*) in 27 *L. R. A.* (N. S.) 454 is also interesting
and instructive.

The value of the interest in the present case was much
less uncertain than was the value of the interest in *Putnam
v. Story,* discussed in the case of *Banks' Will,* because here it
depended only upon the single contingency of a child sur-
viving his mother, whereas there it depended not only upon
such survival but upon the number of heirs.     ·

It is true there is no statute in Maryland which expressly
provides, like the Massachusetts statute, that a creditor may
reach in equity property which "cannot be reached and ap-
plied until a future time," etc.; but as far back as *Cook v.
Husbands,* 11 Md. 492, it was held that a contingent interest
depending upon survival was assignable in equity.   Such an
interest therefore comes within the classification of the
Bankrupt Act of property which the bankrupt before adjudi-
cation, "could by any means have transferred."

In the note to *Clowe, Trustee, v. Seavey* (N. Y.), 47 L. R.
A. (N. S.) 284, it is said: "Where the contingency is one ·
of event only, the true rule, except of course in case of
contrary statutory provision, would seem to vest the re-
mainderman's contingent estate or interest in his trustee in
bankruptcy."

There is nothing in the cases of *Hambleton v. Darrington,*
36 Md. 434, and *Fisher v. Wagner,* 109 Md. 243, cited by
appellee, inconsistent with the conclusion we have reached.
In the former case the court quoted with approval the fol-
lowing: "All estates which are transmissible, either by oper-
ation of law or by act of the owner, are devisable. · This, it
has been held, extends to a possibility if it is not a mere
naked expectancy, but be coupled with an interest." ` *Redfield
on Wills,* part 1, pp. 388, 389; *Fearne on Con. Rem.,* 371.

"And contingent estates of inheritance, as well as springing and executory uses and possibilities, coupled with an interest, where the person to take is certain, are transmissible by descent, and are devisable." 4 *Kent's Com's.,* 261.

The Court held that the testator had a devisable interest, but concluded from the whole of his will that he did not intend to include it in the residuary clause.

In *Fisher v. Wagner, supra,* the contention was that a contingent remainder was not devisable. It was there held that it was, being a contingent estate of inheritance. Of course, a contingent remainder which could only be enjoyed by the remainderman in case he survives the life tenant is not devisable, because the will does not take effect until after the death of the testator, and if he dies before the life tenant, no interest passes. It was in that connection that Judge Boyd, who wrote the opinion, said: "the contingency attached to his taking it did not, in any way, relate to his capacity to take, and there was no contingency as to who was to take, but Robert A. Fisher was distinctly named as the one."

In the present case the contingency related to the event, that is, the survival of the bankrupt and not to who would take if the event should happen. It was not such an interest as could be devised. But it was a possibility coupled with an interest, nevertheless, and as such was assignable under the rule laid down in *Moore v. Lyons, supra,* and quoted with approval in *Putnam v. Story, supra,* and *Lee v. Waltjen, supra.*

It follows that the decree appealed from must be affirmed so far as it affects accrued income, and reversed, so far as it affects the one-eighth interest in remainder.

> *Decree affirmed in part and reversed in part, and cause remanded, costs to be paid out of the interest in remainder of Charles M. Rahe, Jr.*

PARKE, J., dissents.