THE RARITAN STATE BANK *et al.* Appellees, *vs.* LUTHER HUSTON *et al.* Appellants.

*Opinion filed April 21, 1928.*

1. DEEDS—*what provision does not fix termination of particular estate but is a condition precedent to enjoyment of the remainder.* Where a deed conveys certain property to the grantee "during his lifetime," a subsequent provision that upon the death of the grantee and his wife (naming her) the property is "to revert and go back to the legal heirs" of the grantee's father and mother does not limit the particular estate to the lives of both the grantee and his wife but the particular estate is for the life of the grantee, only; and the remaindermen, although the grantee's father and mother have both died, have no fixed right to the enjoyment of the estate until the death of the grantee's wife, and should the particular estate end before that time the contingent remainder must fall with it.

2. SAME—*word "revert" may refer to disposition of remainder.* While the word "revert" is not the technically appropriate word to create a remainder, the term "remainder" is not one of art which it is necessary to employ in creating such estate, and any form of expression indicating the intention of a grantor or devisor to create a remainder is sufficient; and the provision that after a life estate the property shall "revert and go back" to other parties will be sufficient if the intention is clear.

3. SAME—*what is a remainder.* A remainder is a remnant of an estate depending upon a particular prior estate created at the same time and by the same instrument and limited to arise immediately on the determination of that estate and not in abridgment of it.

4. SAME—*when remainder is contingent.* A remainder is contingent when the fulfillment of some condition precedent other than the termination of the preceding estate is necessary before it can become a present estate and when the right of enjoyment is to accrue on an uncertain event, which may never happen at all or not until after termination of the particular estate, or when the estate is limited to an uncertain person.

5. SAME—*when a remainder is vested.* A remainder is vested when it is limited to determinate persons and when throughout its continuance the remaindermen or their heirs have the right to the immediate possession whenever and however the preceding estates may terminate.

6. SAME—*what distinguishes vested from contingent remainder.* What distinguishes a vested from a contingent remainder is its present capacity to take effect in possession in a determinate person immediately upon the determination of the particular estate, while it is the uncertainty as to the right to take the property, and not as to the enjoyment of it, that makes a contingent remainder.

7. SAME—*a contingent remainder cannot be conveyed.* A contingent remainder is not an estate but is merely the chance of having one, and it cannot be the subject of sale, cannot be levied upon by legal process and cannot be conveyed voluntarily by deed.

APPEAL from the Circuit Court of Henderson county; the Hon. WILLIS F. GRAHAM, Judge, presiding.

GUMBART & GRIGSBY, for appellants.

HANLEY & COX, and SAFFORD & SOULE, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Henderson county for the partition of eighty acres of land which belonged in his lifetime to John M. Huston, who died intestate on November 27, 1913. His wife, Lydia J. Huston, survived him, and his heirs were his five sons, a daughter and a grandson, Leon Gearhart, the child of a deceased daughter. A few days after his death the widow, the daughter, the grandson and four of the sons executed a quit-claim deed conveying to the other son, "Burress Huston, during his lifetime, of the town of Raritan, county of Henderson and State of Illinois, all interest in the following described real estate: The west half of the northwest quarter of section twenty-six (26) in township eight (8) north of range four (4) west of the fourth principal meridian. And upon the death of said Burress and Nora Huston the above described land to revert and go back to the legal heirs of John M. and Lydia Huston. Said Burress or Nora Huston shall pay all taxes and keep in repair all

improvements, situated in the county of Henderson, in the State of Illinois." Nora Huston was the wife of Burrus. Robert Huston, one of the sons, died in 1917, unmarried, leaving as his heirs his mother, brothers and sister and his nephew, Leon Gearhart, who died a few days after, leaving his son, Eldon Gearhart, as his only heir. On February 29, 1924, Burrus and Nora Huston conveyed to James Lofftus, a director of the Raritan State Bank, all interest in the premises, the consideration being a mortgage for $10,000 given by Burrus to the bank. Lofftus took the title for the use of the bank. On March 1, 1924, Luther Huston conveyed all his interest in the property to Minnie E. Black, and on March 22, 1924, he was adjudged a bankrupt. George A. Falder was appointed his trustee in bankruptcy, and Minnie E. Black conveyed to him all right, title and interest in the property, and subsequently, by an order of the district court, Falder sold and conveyed to James Spiker all the interest of Luther Huston in the premises. On March 7, 1924, Burrus Huston was adjudicated a bankrupt by an order of the district court and his trustee abandoned and disclaimed interest in the property. On February 22, 1925, Lydia J. Huston, the widow of John M. Huston, died testate, and her sons Scott and Thalus Huston were appointed executors of her will and trustees under it. On August 31, 1925, Burrus and Nora Huston made another conveyance of their interest in the premises to Lofftus. The bank has been in possession of the premises since March, 1924. The bank and Eldon Gearhart, who was a minor, filed their bill for the partition of the land and the correction of an error in the deed to Lofftus of February 29, 1924. A decree was rendered correcting the error in the deed of February 29, 1924, to Lofftus, and finding that the bank, and Lofftus as trustee, are the owners of an undivided two-sevenths part of the premises and of an estate for and during the life of Burrus and Nora Huston in the undivided five-sevenths part of the premises, and, subject

to the life estate, Eldon Gearhart, James Spiker, Scott Huston, Thalus Huston and Mary E. Oakman are each entitled to the undivided one-seventh part of the property. Thalus and Scott Huston, individually and as executors and trustees under the will of Lydia J. Huston, have appealed.

The decision of the case depends upon the construction of the deed of the widow and heirs of John M. Huston to Burrus Huston. The decree is based upon the finding that the deed conveyed the undivided six-sevenths of the land to Burrus during his own life and also during the life of Nora Huston, and created a contingent remainder to those persons who should be the heirs of John M. and Lydia J. Huston, and that such heirs were ascertained by the death of Lydia. The appellants contend that the deed conveyed an estate to Burrus for his life, only, with a gift over by way of springing use after the death of Burrus and Nora to the persons who at that time should be heirs of John and Lydia Huston. The only words of conveyance in the deed are "convey and quit-claim," which under our statute are sufficient to convey the title. The conveyance is expressly to "Burress Huston during his lifetime" and to no other person. We cannot add to the conveyance the additional words, "and during the life of Nora Huston." No contention is made by either party that any estate was conveyed to Nora, and clearly no such contention could be sustained, for the words used are incapable of such construction.

The appellees contend, however, that to construe the deed as a limitation of the estate granted to Burrus for his own life, only, disregards the words "and upon the death of Burress and Nora Huston," which form part of the granting clause and fix the time of the termination of the estate granted. No argument is suggested to support the statement that these words fix the time of the termination of the estate granted. It is pure assumption and is in

contradiction of the express language of the deed, which fixes the duration of Burrus' estate during his life. The words "upon the death of Burress and Nora Huston" fix the time of the beginning of the subsequent estate and have no reference to the end of the preceding estate. The meaning of the words is not doubtful, they must be given their ordinary meaning, there is no obvious omission, the intention expressed is lawful, and there is no reason why that plain intention should not be given effect as it is written. Why Nora's name is mentioned in the deed is not apparent. She was not a party to it. The provision that "said Burress or Nora Huston shall pay all taxes and keep in repair all improvements" was of no effect so far as she was concerned and throws no light on the intention of the grantors. Burrus could have no possession and enjoyment of the estate during the life of Nora after his own death and she would have no right of possession. The deed may fail to express the intention of the grantors, but it does express an intention, which is not doubtful, to convey the land, disposing definitely of all interest in it upon the limitations stated. Under it, therefore, a present life estate in the land was conveyed to Burrus Huston, with remainder after the death of Burrus and Nora to the heirs of John M. and Lydia J. Huston. The deed provides that upon the death of Burrus and Nora the land shall revert and go back to the heirs of John M. and Lydia J. Huston. The word "revert" is not the technically appropriate word to create a remainder, but the term "remainder" is not one of art, which it is necessary to employ in creating such an estate, and any form of expression indicating the intention of a grantor or devisor to do this is sufficient. (2 Washburn on Real Prop. —6th ed.—sec. 1540.) The death of Nora was a condition precedent to the enjoyment of the remainder. The heirs of John M. and Lydia J. Huston have no fixed right to the enjoyment of the estate before her death. Their right is postponed until her death, and in case that should

not occur until after the death of Burrus, which will termi-
nate his life estate, the particular estate upon which the re-
mainder depends will come to an end before the fixed right
of enjoyment by the remaindermen shall have accrued.

A remainder is a remnant of an estate depending upon
a particular prior estate created at the same time and by
the same instrument and limited to arise immediately on
the determination of that estate and not in abridgment of
it.  (4 Kent's Com. 197; 2 Washburn on Real Prop.—
6th ed.—secs. 1526, 1536; 2 Blackstone's Com. 164; *Stol-
ler* v. *Doyle,* 257 Ill. 369.)   A remainder is contingent when
the fulfillment of some condition precedent other than the
termination of the preceding estate is necessary before it
can become a present estate and when the right of enjoy-
ment is to accrue on an uncertain event.   (*Gray* v. *Shinn,*
293 Ill. 573.)   A remainder is vested when it is limited to
determinate persons, to take effect in possession immedi-
ately upon the determination of the particular estate, and
is contingent when it is limited to take effect upon a dubi-
ous or uncertain event or to a dubious and uncertain per-
son.   The main thing which distinguishes a vested from
a contingent remainder is its present capacity to take ef-
fect in possession in a determinate person immediately
upon the determination of the particular estate.   In the
one case there is a person in being ascertained and ready
to take with a present right of future enjoyment, while
in the other there is either no ascertained person in be-
ing ready to take immediately upon the determination of
the particular estate or it is uncertain whether the event
upon which the estate is to vest will ever happen.   It is the
uncertainty as to the right to take the property, and not as
to the enjoyment of it, that distinguishes a contingent from
a vested remainder.   The general rule is, that where a tes-
tator makes a devise or gift of property to certain persons
or to the survivors of them, and by the same instrument
creates a particular estate and postpones the period of dis-

329—39

tribution until the determination of such prior estate, the gift or devise to such survivors will take effect and vest only in those of the class who shall survive the determination of the particular estate and answer to the description at that time. Where a testator gives his wife a life estate and provides that after her death and after his youngest child becomes of age the estate shall be sold and the proceeds divided among his surviving children and the children of any children who may have died, the fact that the distribution is postponed, not only to let in a particular estate but also because of the minority of the youngest child, indicates an intention to create a contingent remainder. *Jones* v. *Miller,* 283 Ill. 348.

In this case the right of possession is postponed not only until the termination of the life estate of Burrus Huston but until the death of Nora. The heirs of John M. and Lydia Huston will have no right of possession until after the death of Nora and they will have no present fixed right of future enjoyment until her death, and unless that event occurs in Burrus' lifetime, the particular estate which is necessary to support the remainder will have terminated before the right of possession-accrues. The remainder is therefore contingent. In a limitation to A for life, remainder to B, B has a capacity to take the possession at any moment when A may die; but if the limitation is to A for life, remainder to B after the death of J. S., and J. S. is still alive, B can have no capacity to take until J. S. dies. When J. S. dies, if A is still living, the remainder becomes vested but not before, and if A should die in the lifetime of J. S. the remainder in B would fail although he was then alive. 2 Washburn on Real Prop. (6th ed.) sec. 1543; 1 Preston on Estates, 70; Coke on Littleton, 265, note 213; 2 Crabb on Real Prop. 966.

A remainder is vested when throughout its continuance the remainderman, or the remainderman and his heirs, have the right to the immediate possession whenever and how-

ever the preceding estates may terminate. It is contingent if it is limited to take effect in possession upon an event which may not happen until after the termination of the particular estate. (Kales on Estates, Future Interests and Illegal Conditions and Restraints in Illinois, sec. 29; Gray's Rule Against Perpetuities,—2d ed.—sec. 101; Fearne on Contingent Remainders, 9 Butler's note "*g.*") A contingent remainder is not an estate but is merely the chance of having one, and cannot be the subject of sale, cannot be levied upon by legal process and cannot be conveyed voluntarily by deed. (*DuBois* v. *Judy,* 291 Ill. 340, and cases cited.) The deeds of Luther and Burrus Huston had, therefore, no effect to transfer the contingent remainder, and neither the bank nor Spiker obtained any title through them. The bank is the owner of the one-seventh interest in the fee which Burrus inherited from his father and of the life estate in the remaining six-sevenths conveyed to Burrus by the deed from the other heirs of John M. Huston. If Nora Huston dies before Burrus the contingent remainder will vest in the persons who will then be the heirs of John M. and Lydia J. Huston, but if Burrus dies before Nora the contingent remainder will be destroyed. In that event the reversion in the undivided six-sevenths of the land which remained in the grantors in that deed who were the heirs of John M. Huston will remain in them or their heirs, devisees or assigns.

The decree is reversed and the cause is remanded to the circuit court of Henderson county, with directions to enter a decree in accordance with this opinion.

*Reversed and remanded, with directions.*